IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HICHAM IMANI,<br>          Plaintiff,<br><br>          v.<br><br>U-HAUL INTERNATIONAL, INC.,<br>et al.,<br>          Defendants. | CIVIL ACTION NO. 07-2231 |

**M E M O R A N D U M  &  O R D E R**

Katz, S.J.                                                                              September 4, 2007

      Before the court is "Defendants' Motion to Dismiss or in the Alternative Motion to Transfer Venue to the Southern District of New York" (Document No. 12) and Plaintiff's response thereto (Document No. 14). For the following reasons, the court will grant the motion to transfer, deny as moot the motion to dismiss, and transfer this action to the United States District Court for the Southern District of New York.[1]

      **I. Background**

---

[1] Defendants' motion was filed on July 20, 2007. Since Plaintiff has failed to file a response within 14 days after that date as required by Local Rule of Civil Procedure 7.1(c), the court will exercise its authority to grant Defendants' motion as uncontested. See Local Rule 7.1(c). The reasoning set forth in this memorandum is therefore an alternative ground for granting Defendant's motion to transfer.

1

### A. The Complaint

Plaintiff, a self-described "Moroccan-born Arabic Muslim," was employed by Defendants[2] from 1994 until April 2007, during which time he was promoted several times. See Compl. ¶¶ 1, 16–18. In February 2003, Plaintiff was promoted from his position as Marketing Company President ("MCP") of U-Haul Co. of South Jersey to the position of MCP of U-Haul Co. of Manhattan and Bronx. Id. ¶ 19. Plaintiff's new position required him to work in New York City. Id. More than two years later, in late 2005, Plaintiff began reporting to Doug Wynne, Defendants' Area District Vice President. Id. ¶¶ 20–21.

On January 11, 2006, Mr. Wynne allegedly told Plaintiff that he was being demoted to the position of "general manager" in Philadelphia. Id. ¶ 22. Mr. Wynne did not explain the reasons for Plaintiff's demotion, "except to state that [Plaintiff] had burned bridges and that the demotion was based on [his] 'gut feeling.'" Id. ¶ 23. Plaintiff claims that, during his tenure as MCP of U-Haul Co. of Manhattan and Bronx, he "made substantial improvements in the area within his responsibility," and that "he received no disciplinary warnings or negative evaluations prior to his demotion." Id. ¶¶ 24–25. Plaintiff further claims that he

---

[2] There are three named Defendants in this action: (1) U-Haul International, Inc., (2) U-Haul Co. of Pennsylvania, Inc., and (3) U-Haul Co. of New York and Vermont, Inc.

was qualified for the position he held prior to being demoted, and that he was replaced by a man named Jeff Somberg, "who, on information and belief, is non-Arabic, non-Muslim, and U.S. born [sic]." Id. ¶¶ 27–28.

Based on these facts, Plaintiff has asserted three claims against Defendants. In Count I, Plaintiff alleges that Defendants violated Title VII of the Civil Rights Act of 1964 by demoting him because of his race, national origin, and/or religion. Id. ¶¶ 29–31. In Count II, Plaintiff alleges that Defendants violated 42 U.S.C. § 1981 by discriminating against him on the basis of his race. Id. ¶¶ 32–34. In Count III, Plaintiff alleges that Defendants violated the New York City Human Rights Law ("NYCHRL") by demoting him because of race, national origin, and/or creed. Id. ¶¶ 35–37.

### B. Douglas Wynne's Sworn Statement

In support of their motion, Defendants have submitted a sworn statement from Douglas R. Wynne – Plaintiff's former supervisor. This short statement reads as follows:

> I, Douglas R. Wynne, hereby declare as follows:
>
> 1. I am over eighteen years of age, and I am of sound mind.
>
> 2. I am employed by U-Haul Business Consultants, Inc. as an Area District Vice President.

3.  Mr. Imani was employed as a Marketing Company President by U-Haul of New York and Vermont, Inc. ("Marketing Company President").

4.  In his role of Marketing Company President, Mr. Imani was responsible for overseeing the overall operations of an administrative area of U-Haul of New York and Vermont, Inc. known as a marketing company.  In connection with his responsibilities, he was required to travel from the U-Haul of New York and Vermont, Inc. facility located at 230 W. 230th Street, Bronx, New York to different locations in New York.

5.  In his role of Marketing Company President, Mr. Imani was responsible for overseeing over 100 employees, all of who [sic] worked in New York, and some of whom are likely witnesses in this matter.

6.  George MacLeish was also a Marketing Company President employed by U-Haul of New York and Vermont, Inc. and was one of Mr. Imani's colleagues while Mr. Imani was employed as a Marketing Company President.  Mr. MacLeish will likely serve as a witness in connection with this matter.  Mr. MacLeish works and lives in New York.

7.  The decision to demote Mr. Imani was based on his handling of business matters as a Marketing Company President for U-Haul of New York and Vermont, Inc.  When I informed Mr. Imani of his demotion, I did so at the U-Haul of New York and Vermont, Inc. facility located at 230 W. 230th Street, Bronx, New York.

8.  Mr. Imani's personnel file, which contains records regarding his employment with U-Haul of New York and Vermont, Inc., is located in Phoenix, Arizona.

9.  I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct based on my personal knowledge and review of corporate records.  Executed on this 20[th]

day of July 2007.

/s/ Douglas R. Wynne

Defendant's Motion, Exhibit A.

## II.  Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2007).  "To justify a transfer under this section, the moving party must show that venue is proper in the transferee district and that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice."  Lindley v. Caterpillar, Inc., 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000).  Thus, "[t]he burden of establishing the need for transfer still rests with the movant."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  "And, in ruling on defendant's motion the plaintiff's choice of venue should not be lightly disturbed."  Id.

In Jumara, the Third Circuit neatly summarized the factors district courts should consider when ruling on motions to transfer:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of the parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to consider all relevant factors to determine whether on balance the

litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum. While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

The private interests have included: [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; [6] and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests have included: [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879–80 (internal citations and quotations omitted).

### III.  Discussion

Defendants have moved to dismiss this action for lack of venue pursuant to 28 U.S.C. § 1406(a). In the alternative, Defendants have moved to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). As explained below, venue for this action is proper in the Southern District of New York, and the relevant factors weigh in favor of transferring this

action to that district. The court therefore will grant the motion to transfer and deny as moot the motion to dismiss.

### A. Venue

Plaintiff's claims arise under Title VII (Count I), 42 U.S.C. § 1981 (Count II), and the NYCHRL (Count III). Venue for each of these claims is proper in the Southern District of New York.

Venue for Plaintiff's Title VII claim in Count I is governed by 42 U.S.C. § 2000e-5(f)(3), which reads as follows:

> **(3)** Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. *Such an action may be brought [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice*, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e-5(f)(3) (2007) (emphasis added). Venue for Plaintiff's claims in Counts II and III is governed by 28 U.S.C. § 1391(b), which reads as follows:

> **(b)** A civil action wherein jurisdiction is not founded solely on

7

> diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (2007).

Plaintiff's 42 U.S.C. § 1981 claim in Count II and his NYCHRL claim in Count III arise out of the same facts that underlie Plaintiff's Title VII claim in Count I. These facts, in their simplest form, are that Plaintiff, who worked in Bronx, New York, was allegedly demoted to a position in Philadelphia, Pennsylvania on the basis of his race, national origin, creed, and/or religion. Defendants have countered Plaintiff's allegation by arguing that the demotion was justified by Plaintiff's job performance while working in Bronx, New York. Since "a substantial part of the events or omissions giving rise to [Plaintiff's] claim" occurred in and around New York City and Bronx, New York, and therefore within the Southern District of New York, the court holds that venue for Plaintiff's claims in Counts II and III is proper in that district pursuant to 28 U.S.C. § 1391(b)(2).

The analysis with regard to Plaintiff's Title VII claim in Count I is

even simpler. Because the alleged discrimination against Plaintiff took place in and around Bronx, New York, and because Plaintiff would have continued working in Bronx, New York if he had not been demoted, there is no doubt that venue for this case is proper in the Southern District of New York. See 42 U.S.C. § 2000e-5(f)(3) ("Such an action may be brought [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . ."); see also Defendant's Motion, Exhibit A, at ¶ 7 ("The decision to demote Mr. Imani was based on his handling of business matters as a Marketing Company President for U-Haul of New York and Vermont, Inc. When I informed Mr. Imani of his demotion, I did so at the U-Haul of New York and Vermont, Inc. facility located at 230 W. 230th Street, Bronx, New York.").

### B. Private Interest Factors

The relevant private interest factors weigh in favor of transferring this action to the Southern District of New York, despite Plaintiff's attempt to litigate this case in the Eastern District of Pennsylvania.

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice

. . . should not be lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation omitted). Plaintiff has chosen to litigate this action in the Eastern District of Pennsylvania, but "[i]n exercising their discretion, courts consistently hold that a [plaintiff's] choice is deserving of less weight where none of the operative facts of the action occur in the forum selected by the plaintiff." Eagle Traffic Control, Inc. v. James Julian, Inc., 933 F. Supp. 1251, 1259 (E.D. Pa. 1996) (citing cases) (internal quotation omitted). In this case, the court must give Plaintiff's choice of forum little weight, because the court cannot discern any events related to this litigation that occurred in the Eastern District of Pennsylvania. Plaintiff now lives in the Eastern District of Pennsylvania, but all of the events related to how he was treated at work appear to have occurred where he worked – i.e., in and around Bronx, New York. See National Mortgage Network, Inc. v. Home Equity Centers, Inc., 683 F. Supp. 116, 119 (E.D. Pa. 1988) (reaching the same conclusion on similar facts).

        Other private interest factors weigh in favor of transferring this action to the Southern District of New York. Defendants' preferred forum is obviously the Southern District of New York. As discussed in the venue context, Plaintiff's claims arose out of events that occurred in and around Bronx, New York, not in the Eastern District of Pennsylvania. See Defendant's Motion, Exhibit A, at ¶¶ 4,

7. And perhaps most importantly, the witnesses that are most likely to testify all live in and around Bronx, New York, where they worked with and under Plaintiff for approximately three years before he was demoted to a position in Philadelphia in January 2006. Id. at ¶¶ 5–6. Transferring this action to the Southern District of New York therefore will further greatly the convenience of the witnesses and the interest of justice. See, e.g., Bolton v. Tesoro Petroleum Corp., 549 F. Supp. 1312, 1315 (E.D. Pa. 1982) ("There is no question that the availability and convenience of witnesses and parties is an important consideration, perhaps the paramount consideration, in determining the desirability or necessity of a transfer."); Cantor v. Caswell, Civ. A. No. 94-5517, 1994 WL 649324, at *2 (E.D. Pa. Nov. 15, 1994); Smith v. Nicolet Instrument Corp., Civ. A. Nos. 92-0036 and 92-0324, 1992 WL 78833, at *2 (E.D. Pa. Apr. 10, 1992).

Another private interest factor – the convenience of the parties – does not weigh strongly for or against transfer. Of the three Defendants, U-Haul International, Inc. is alleged to be a Nevada corporation with its corporate headquarters in Arizona; U-Haul Co. of Pennsylvania, Inc. is a Delaware corporation with an office in Philadelphia; and U-Haul Co. of New York and Vermont, Inc. is a Delaware corporation with an office in Bronx, New York. See Compl. ¶¶ 4–6. Transferring this action thus would appear to benefit U-Haul of

New York and Vermont, burden U-Haul of Pennsylvania, and not affect U-Haul International. But the net result would not change if the court did not transfer this action.[3] As for Plaintiff, who resides in Philadelphia, Pennsylvania, transferring this action to the Southern District of New York will require him to travel to New York City for trial. Compared to the burden that would be imposed on the numerous witnesses traveling from New York, however, Plaintiff's burden is slight and does not outweigh the factors favoring transfer. See Bolton, 549 F. Supp. at 1316–17 (reaching the same conclusion, despite the moving defendants' significantly stronger "bargaining power and financial positions").

       The last private interest factor – i.e., the location of books and records – appears neutral. According to Mr. Wynne's sworn statement, "[Plaintiff's] personnel file, which contains records regarding his employment with U-Haul of New York and Vermont, Inc. is located in Phoenix, Arizona." Defendants' Motion, Exhibit A, at ¶ 8. It presumably would be equally burdensome to transport those records to Philadelphia or New York City. Neither party has argued that other books and records in other locations will be necessary to litigate this case, so the court's consideration of this factor can go no further.

---

[3] If the court did not transfer this action, that decision would burden U-Haul of New York and Vermont, benefit U-Haul of Pennsylvania, and not affect U-Haul International.

### C. Public Interest Factors

The only public interest factor that the parties address is "the local interest in deciding local controversies at home," Jumara, 55 F.3d at 879, and this factor also weighs in favor of transferring this action to the Southern District of New York.[4] As explained above, the events giving rise to this action – i.e., Plaintiff's work for Defendants in and around Bronx, New York, and the allegedly unlawful treatment he experienced there – occurred in the Southern District of New York. The Eastern District of Pennsylvania is a desirable forum only because Plaintiff moved and worked here *after* he was demoted, *after* the alleged discrimination took place. The public interest in deciding local controversies locally, which promotes the interest of justice, therefore weighs heavily in favor of transfer.[5] See Wm. H. McGee & Co., Inc. v. United Arab Shipping Co., 6 F. Supp.

---

[4] Without more information, the court is unsure what weight to assign the public interest factors relating to "the enforceability of the judgment," "the relative administrative difficulty in the two fora resulting from court congestion," and "the public policies of the fora." Jumara, 55 F.3d at 879. The public interest factor that considers "practical considerations that could make the trial easy, expeditious, or inexpensive" appears to favor transfer to the Southern District of New York because of its proximity to the events giving rise to this action. But since neither party briefed this factor, the court does not give it much weight.

[5] In their discussion of the public interest in deciding local controversies locally, Defendants write that "[s]uch an interest is even stronger in this case where Plaintiff is alleging a violation of New York law . . . ." The fact that New York law will apply to Plaintiff's NYCHRL claim in Count III does not bear on the public interest in deciding local controversies locally, but it does affect the weight of the last public interest factor – "the familiarity of the trial judge with the applicable state law." Jumara, 55 F.3d at 879–80. "While this court is, of course, capable of applying [New York] law, a [New York] court's familiarity with [New York] law will

2d 283, 292 (D.N.J. 1997) (emphasizing the need to avoid burdening jurors with cases that have no connection to their community); Watt v. Consol. Rail Corp., Civ. A. No. 97-2203, 1997 WL 288607, at *2 (E.D. Pa. May 21, 1997); Bolton, 549 F. Supp. at 1317.

### IV. Conclusion

Venue for this action will be proper in the Southern District of New York, and, upon consideration of the relevant private and public interest factors, it is clear that Defendants have met their burden of showing that a transfer to that district will serve the convenience of the parties and witnesses, as well as the interest of justice. The court therefore will grant Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a), deny as moot their motion to dismiss pursuant to 28 U.S.C. § 1406(a), and transfer this action to the United States District Court for the Southern District of New York.

An appropriate Order follows.

---

undoubtedly promote efficiency in this case." Cantor, 1994 WL 649324, at *3. The public interest in having this case handled by a judge familiar with New York law therefore weighs in favor of transfer.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HICHAM IMANI,<br>    Plaintiff,<br><br>v.<br><br>U-HAUL INTERNATIONAL, INC.,<br>et al.,<br>    Defendants. | CIVIL ACTION NO. 07-2231 |

**O R D E R**

**AND NOW**, this 4th day of September, 2007, upon consideration of "Defendants' Motion to Dismiss or in the Alternative Motion to Transfer Venue to the Southern District of New York" (Document No. 12), it is hereby **ORDERED** as follows:

    1. Defendants' Motion to Transfer Venue to the Southern District of New York is **GRANTED**;

    2. Defendants' Motion to Dismiss is **DENIED AS MOOT**;

    3. This action is **TRANSFERRED** to the United States District Court for the Southern District of New York; and

    4. The Clerk shall transfer the record forthwith.

BY THE COURT:

/s/ Marvin Katz
_____
**MARVIN KATZ, S.J.**